# IN THE COURT OF APPEALS OF IOWA

No. 21-2006
Filed March 30, 2022

**IN THE INTEREST OF J.A. and L.A.,**
**Minor Children,**

**C.P., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, District Associate Judge.

A mother appeals a district court order terminating her parental rights. **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee state.

William E. Sales, III, Des Moines, for minor children.

Terzo Steves, Des Moines, guardian ad litem for minor children.

Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals a district court order terminating her parental rights. There is clear and convincing evidence in the record to support termination of the mother's parental rights, termination is in the children's best interests, and none of the permissive exceptions to termination should be applied. We affirm the decision of the district court.

## I.    Background Facts & Proceedings

C.P. is the mother of L.A., born in 2010, and J.A., born in 2011.[1]  The Iowa Department of Human Services (DHS) became involved with the family in 2019. There were reports that the children were confined to their rooms and had to ask permission to leave for any reason, including going to the bathroom. The children were afraid to move freely about their home. Alarms were installed on their bedroom doors and baby monitors were placed in their bedrooms. Concerns were raised about the mother's form of discipline. Restriction of food was used as a form of punishment. J.A. was required to stand on his tip toes for long periods of time. He was slapped in the face. J.A. was required to sit for long periods of time, sometimes up to five hours. L.A. had been sexually abused by the mother's paramour.

J.A. was hospitalized for a mental-health assessment, which he enjoyed, stating, "I got to go to the bathroom anytime I wanted." The mother was angry about the way J.A. was treated at the hospital because "the staff treated him too

---

[1] The parental rights of the children's biological parents were terminated in Minnesota. In 2018, they were adopted by C.P., who is their biological maternal aunt and legal mother.

nice" and treated his stay like a vacation. The children were removed from the mother's care on January 3, 2020, and placed in foster care.

The children were adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) (2020). The mother participated in parenting sessions and visitation. She began therapy but was unable to understand how her actions were detrimental to the children. The children were not to have contact with the maternal grandparents due to previous abuse allegations, but the mother continued to allow the maternal grandparents to have contact with the children.[2] The mother struggled to comprehend the need for boundaries with the maternal grandparents.

The children attended therapy due to mental-health concerns. They continued to have behavioral difficulties. Both children demonstrated food insecurities by hoarding and sneaking food. The mother did not follow through in a timely manner with medical and therapy appointments for the children. L.A. has a diagnosis of an adjustment disorder. J.A. has a diagnosis of attention deficit hyperactivity disorder (ADHD) and reactive attachment disorder.

On December 16, 2020, the district court issued a permanency order giving the mother an additional six months to work on reunification with the children. The mother continued with therapy to address her mental-health problems. A psychological assessment found the mother had a "very rigid neurotic adjustment to life."

---

[2] The children were previously in a guardianship with the grandparents, but the guardianship was ended after J.A. was injured while in their care.

DHS had significant concerns that the mother was resorting to previous behaviors that led to the initial removal. The mother continued to struggle in making sure J.A.'s medication were filled in a timely manner. The mother continued to make references to false allegations by the children. There were concerns that the mother was coaching the children to keep secrets. While the mother's therapist reported the mother accepted responsibility for previous abuse, such report was in contrast to the mother's statements to the children's therapists, foster placement, DHS, and other service providers.

The State filed a petition on May 18, 2021, seeking to terminate the mother's parental rights. At the termination hearing, the mother admitted she continued to state that the children made false allegations of abuse. She also conceded that she had treated J.A. differently than L.A.; she stated she did not understand J.A.'s ADHD and would punish him for acting out. The mother also recognized that it would be difficult for the court to return the children without evidence that she had completely changed her ideas about punishment.

The district court entered an order on December 14, terminating the mother's parental rights under section 232.116(1)(f) (2021).[3] Although L.A. was

---

[3] Section 232.116(1)(f) applies when the district court finds the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

over ten years old and objected to the termination, the court concluded that termination of the mother's parental rights was in the children's best interests. The court stated, "It is desirable to continue the child's current placement because it provides a safe and stable home with parents who have demonstrated the ability to meet the needs of the children." The court did not apply any of the exceptions to termination found in section 232.116(3). The mother appeals the termination of her parental rights.

## II.     Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.    Discussion

We follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination contained in section 232.116(3) should be applied. *Id.*

### A.    Statutory Grounds

The mother does not dispute that the statutory grounds for termination of her parental rights under section 232.116(1)(f) were met.[4]  Therefore, we are not required to discuss this step in analyzing whether the district court properly terminated her parental rights.  *Id.* at 40.  On our de novo review, however, we find there is clear and convincing evidence in the record to show the children were more than four years old, there was a CINA adjudication, they had been removed from the mother's care for twenty months at the time of the termination hearing, and they could not be safely returned to the mother's care.  We find the record supports terminating the mother's parental rights under section 232.116(1)(f).

### B.    Best Interests

The mother claims termination of her parental rights was not in the children's best interests.  In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)."  *Id.* at 41.  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *Id.*

The district court aptly found:

> The same harms exist today as at the time of removal.  The mother cannot consistently acknowledge the abuse and neglect the children

---

[4] The mother's appellate brief combines all of the issues on appeal into one sentence.  *See* Iowa Rs. App. P. 6.201(1)(d) (requiring the petition on appeal to substantially comply with form 5 in rule 6.1401), 6.1401–Form 5 (requiring separate issue headings and other requirements for each issue raised).

experienced in her care. She has continued to be unable to schedule medical appointments and communicate the appointment times to the foster parents and school. Prescription refills have continued to be a problem. While mother has at times improved the condition of her home it continues to be a problem.

The mother has not fully recognized how her actions were detrimental to the children. She needs to address her own mental-health concerns and is unable to meet the children's "physical, mental, and emotional needs." *See* Iowa Code § 232.116(2). The children need a parent who can consistently meet their mental-health needs and provide them with stability. This is the second termination of parental rights the children have endured. Both J.A. and L.A. have been removed from their home for twenty months and are "desperately in need of permanency." We find termination of the mother's parental rights is in the children's best interests.

## C.    Permissive Exceptions

Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). There are five exceptions to a finding of termination:

> a. A relative has legal custody of the child.
> b. The child is over ten years of age and objects to the termination.
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> d. It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> e. The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

Iowa Code § 232.116(3).

While a finding of any of these factors allows us to choose not to terminate parental rights, "[t]he factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). We may use our discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (quoting *D.S.*, 806 N.W.2d at 475).

First, the mother argues that the children's objection to the termination should preclude termination. However, J.A. was only nine years old at the time of the termination, so this exception does not apply to him. L.A., who was more than ten years old, objected to the termination of the mother's parental rights. *See id.* § 232.116(3)(b). L.A. stated that she wanted to return to the mother, but if that could not happen, then she wanted to remain with the foster parents. The court found the child should continue in the current placement "because it provides a safe and stable home with parents who have demonstrated the ability to meet the needs of the children." The mother was not able to meet the child's needs. We find the court properly decided not to apply this exception to termination of parental rights.

The mother also asserts termination would be detrimental to the children due to the closeness of the parent-child relationship. *See id.* § 232.116(1)(3)(c). The record demonstrates that a bond exists between the mother and L.A. However, L.A. appears guarded in her statements and says only what she thinks

she is supposed to say in order to protect her mother's feelings. The bond between J.A. and his mother exists to a lesser degree than the bond that exists between his sister and his mother. Further, a bond is not enough to prevent termination. *See D.W.*, 791 N.W.2d at 709 (holding that in analyzing this exception, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs"). The instant record is lacking clear and convincing evidence that a termination would disadvantage either child. We, like the district court, decline to apply this permissive exception.

We affirm the district court's decision terminating the mother's parental rights.

**AFFIRMED.**